UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 03-20048-CIV-KING/O'SULLIVAN

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

v.

**GETANSWERS, INC.,
JAMES KOENIG and
ROBERT COURNOYER,
DAVID NEPO, and
CHARLES EHRLICH,**

**Defendants,**

**and**

**OCEANMARK CONSULTING GROUP, INC.**

**Relief Defendant.**

_____/

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW FOR (i) DEFAULT
JUDGMENT OF PERMANENT INJUNCTION, SETTING DISGORGEMENT AND
CIVIL PENALTY AGAINST GETANSWERS; (ii) FINAL JUDGMENT SETTING
DISGORGEMENT AND CIVIL PENALTY AGAINST KOENIG; and (iii) FINAL
JUDGMENT SETTING CIVIL PENALTY AGAINST DEFENDANT COURNOYER**

Plaintiff Securities and Exchange Commission moves the Court for three final judgments: (1) entering a permanent injunction against Defendant GetAnswers, Inc., finding it liable for disgorgement of $7,040,590.43 plus prejudgment interest of $1,632,496.20, and ordering it to pay the maximum civil penalty allowed under the law; (2) finding Defendant James Koenig liable for disgorgement of $41,538.40 plus prejudgment interest of $9,631.48, and ordering him to pay a civil penalty of $120,000; and (3) ordering Defendant Robert Cournoyer to pay the maximum civil penalty allowed under the law.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2003, the Commission filed an emergency civil injunctive action against GetAnswers, Koenig, and Cournoyer to halt GetAnswers' on-going fraudulent unregistered offering and sale of securities (D.E. 1).  That same day the Court entered an Order granting, among other things, the Commission's Motion for Appointment of Receiver (D.E. 12, 13). Subsequently, the Commission amended its complaint to add Defendants David Nepo and Charles Ehrlich, both of whom have settled with the Commission.

On November 3, 2004, the Court entered an Order Terminating Receivership and Discharging Receiver and Professionals ("Order Terminating Receivership") (D.E. 219).  The Order Terminating Receivership - - issued in response to the Receiver's Motion to Dissolve and Wind-Up the Company (D.E. 199) and the Motion to Terminate Receivership (D.E. 203) filed by certain GetAnswers' shareholders ("Objecting Shareholders") -- provided, in part, that "the Objecting Shareholders shall assume responsibility for the business operations of the Company within 14 days . . . [i]n addition, the Objecting Shareholders shall be responsible for obtaining legal counsel and ensuring that said counsel is timely substituted as the attorney of record in any pending actions initiated by the Receiver during the Receivership." (D.E. 219 at 4-5).

The Order Terminating Receivership also states that the "Objecting Shareholders shall be responsible for the immediate appointment of new directors and officers of GetAnswers in accordance with governing law, and the business operations of the Company pending the retention and/or appointment of appropriate personnel." *Id*. at 4.  It is unknown whether the Objecting Shareholders appointed new directors and officers of GetAnswers.  Indeed, this Court's docket does not reflect any information that will assist in this determination.

On October 16, 2006, this Court issued an Order to Show Cause as to whether any pending motions remained or whether there was any reason this case cannot be closed (D.E. 270). The Commission filed its Response to the Court's Show Cause Order on November 3, 2006 (D.E. 274), in which it notified the Court of the following remaining issues in the case:

- GetAnswers: permanent injunction, disgorgement, prejudgment interest, and a civil penalty;
- Koenig: disgorgement, prejudgment interest, and a civil penalty; and
- Cournoyer: a civil penalty.

On November 9, 2006, the Court issued an Order requiring the Commission to file "an Affidavit stating the amount of money it is seeking in disgorgement and/or civil money penalties against Defendants so that the Court can enter a final default judgment against all Defendants and close out this case." (D.E. 275 at 2). The Commission files this motion in compliance with the Court's Order.

In support of this motion, the Commission submits the Affidavit of the former Receiver's forensic accountant, Soneet R. Kapila, attached as Exhibit 1. Attached as Exhibit A to the Affidavit is Kapila & Company's Initial Report to Receiver. Both the Affidavit and the Report to Receiver evidence the amount of disgorgement the Commission seeks against GetAnswers and Koenig.

### MEMORANDUM OF LAW

**I.  GetAnswers**

    **A.  GetAnswers' Default Merits the Entry of a Permanent Injunction.**

On January 13, 2003, GetAnswers was served with process, and is therefore subject to the jurisdiction of this Court (D.E. 25). Its answer was due on February 2, 2003. Due to the company's failure to serve a responsive pleading to the complaint and its failure to obtain record counsel to

3

appear in the case, the Commission on April 4, 2006, filed a Motion for Entry of Clerk's Default against GetAnswers pursuant to Fed. R. Civ. P. 55(a) (D.E. 256). GetAnswers has not filed a response, and that motion remains pending. In its November 9, 2006 Order, the Court indicated it would "enter a final default judgment against all Defendants and close out this case." (D.E. 275 at 2). Should the Court issue a default judgment against GetAnswers, the factual allegations of the Commission's complaint would be deemed admitted by the entry of a default. *Buchanan v. Bowman*, 820 F.2d 359, 360 (11th Cir. 1987); *Nishimatsu Construction Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When, as here, a defendant has failed to defend and a default is entered, liability for violations of the federal securities laws as alleged in the complaint and the propriety of the relief sought therein are deemed established. *Buchanan*, 820 F.2d at 360; *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983); *Miller v. Paradise of Port Richey, Inc.,* 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). The Complaint's factual allegations support entry of the proposed Default Judgment. These allegations include:

### *GetAnswers' Illegal Offering*

GetAnswers raised money from the general public, primarily physicians, by offering securities in the form of common stock. GetAnswers offered securities from approximately December 2000 to the filing of this action, and raised at least $7 million from more than 240 investors located throughout the country (D.E. 187 at ¶ 14).

GetAnswers solicited investors through an in-house boiler room staffed with unlicensed sales representatives. The unlicensed sales representatives were hired by GetAnswers and paid commissions through GetAnswers' checking accounts. *Id*. at ¶ 15.

GetAnswers solicited doctors by sending an unsolicited facsimile inviting them to join GetAnswers' "medical advisory board," and offering compensation for answering medical questions submitted to GetAnswers' website. The "medical advisory board" was primarily a ruse to create a list of doctors that sales representatives could later contact to pitch GetAnswers' stock. *Id*. at ¶ 16.

4

No registration statement was filed or in effect with the SEC in connection with the securities that GetAnswers offered and sold. Moreover, GetAnswers did not require its sales representatives to hold any securities licenses. *Id*. at ¶ 16.

### *Material Misrepresentations and Omissions*

GetAnswers made materially false representations and omissions in connection with the offer and sale of its securities in offering materials, on its website and through sales representatives. *Id*. at ¶ 21.

GetAnswers' Private Placement Memoranda ("PPMs") represented to investors that it was "led by a management team experienced in successful start-ups..." and extolled Koenig's purported past experience as an Internet start-up entrepreneur. The PPMs stated:

> While still attending business school at the University of Florida, Mr. James Koenig founded an Internet company (EZ Notes) that provides educational services to college students. Within one year of inception, Mr. Koenig had successfully developed the company to a national scalable model and secured $25 million of venture capital financing which led to a successful implementation of a national strategy (Allstudents.com) and then subsequent sale of the company to a subsidiary of a Fortune 500. *Id*. at ¶ 23.

This information was false. Koenig was not the founder of EZ Notes and he never developed the company into a national scalable model nor secured $25 million in venture capital financing. EZ Notes was also never sold to a subsidiary of a Fortune 500 company. *Id*. at ¶ 24.

### *Use of Investor Proceeds*

GetAnswers' PPMs falsely represented to investors that their investments would be used to primarily fund the development of its website. *Id*. at ¶ 28.

A significant portion of investor funds were used to pay undisclosed commissions ranging between 7% to 12% and to pay for luxury automobiles and other lavish perks such as cash advances and expensive dinners for GetAnswers' management and employees. *Id*. at ¶ 30.

Accordingly, it is appropriate for the Court to enter a default judgment against GetAnswers in which the company is enjoined from violating Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 ("Securities Act") and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange

Act") and Rule 10b-5 thereunder. The Court's judgment should also order GetAnswers to pay disgorgement, prejudgment interest, and the maximum penalty allowed by law.

> **B.  The Court Should Order GetAnswers to Pay $7,040,590.43 in Disgorgement and $1,632,496.20 in Prejudgment Interest.**

Disgorgement is designed both to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws. *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978); *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989); *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985); *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987), *cert. denied*, 486 U.S. 1014 (1988); *SEC v. Manor Nursing Centers*, 458 F.2d 1082, 1103-1104 (2d Cir. 1972) ("The effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable"). Where, as here, the fraud is "pervasive," the Court should order all profits stemming from the scheme to be disgorged. *CFTC v. British American Commodity Options Corp.*, 788 F.2d 92, 93-94 (2d Cir.), *cert. denied*, 479 U.S. 853 (1986). "The District Court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged." *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996), *cert. denied*, 522 U.S. 812 (1997).

"The SEC is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains." *SEC v. Calvo*, 378 F.3d 1211, 1217 (11th Cir. 2004). The burden then shifts to the defendant to demonstrate that the SEC's estimate is not a reasonable approximation. *Id*. at 1217. "The SEC's burden for showing the amount of assets subject to disgorgement . . . is light: 'a reasonable approximation of a defendant's ill-gotten gains [is required] . . . . Exactitude is not a requirement.'" *SEC v. ETS Payphones, Inc.,* 408 F.3d 727, 735 (11th Cir. 2005) (quoting *Calvo*, 378 F.3d at 1217).

6

The Commission "is not required to trace every dollar of proceeds misappropriated by the defendants . . . nor is [it] required to identify monies which have been commingled by them." *SEC v. Great Lakes Equities Co.*, 775 F. Supp. 211, 214 n.21 (E.D. Mich. 1991), *aff'd*, 12 F.3d 214 (6th Cir. 1993). Moreover, in determining the appropriate disgorgement amount, all doubts "are to be resolved against the defrauding party." *SEC v. First City Fin. Corp., Ltd.,* 688 F. Supp. 705, 727 (D.D.C.1988), *aff'd*, 890 F.2d 1215 (D.C. Cir. 1989). "Once the [SEC] has established that the disgorgement figure is a reasonable approximation of unlawful profits, the burden of proof shifts to the defendants, who must 'demonstrate that the disgorgement figure is not a reasonable approximation.'" *SEC v. Hughes Capital Corp.,* 917 F. Supp. 1080, 1085 (D.N.J. 1996), *aff'd*, 124 F.3d 449 (3d Cir. 1997) (*quoting First City*). The defendant is then "obliged clearly to demonstrate that the disgorgement figure [is] not a reasonable approximation." *First City*, 890 F.2d at 1232.

An evidentiary hearing is required only in cases in which the amount of ill-gotten gains is uncertain. Under Rule 55(b)(1) of the Federal Rules of Civil Procedure, the Court may enter judgment if the plaintiff's claim "is for a sum certain or for a sum which can by computation be made certain." *SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005). Federal Rule of Civil Procedure 55(b)(2) covers all other cases not covered by Fed. R. Civ. P. 55(b)(1). In pertinent part, Fed. R. Civ. P. 55(b)(2) allows a court "if . . . it is necessary to take an account or to determine the amount of damages . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ." *Id*. at 1231 n.12 ("An evidentiary hearing is not a *per se* requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone.").

From at least December 2000 through the filing of this action, GetAnswers, through its principals, raised at least $7,040,590.43 from hundreds of investors nationwide, primarily physicians, through an in-house boiler room (Complaint, D.E. 187 at ¶ 2; Kapila Aff. at ¶ 7). Through its offering and marketing materials and sales representatives, GetAnswers made numerous false representations and omissions to investors relating to, among other things, the experience of its president and chief executive officers in starting successful Internet companies, its affiliation with a college, the use of investor proceeds, the safety and profitability of investing in the company, and its compliance with all securities laws (Complaint, D.E. 187 at ¶ 2).

As a result of the acts or course of conduct described in the complaint, GetAnswers received, either directly or indirectly, $7,040,590.43 in ill-gotten gains from investors (Kapila Affidavit at ¶ 7) and (Exhibit A to Affidavit, Initial Report to Receiver, Summary of Cash Activity, page 1).[1] GetAnswers has not re-paid any of these ill-gotten gains. The Court should, therefore, set GetAnswers' disgorgement at $7,040,590.43.

The Court should also require GetAnswers to pay pre-judgment interest. The Commission has calculated pre-judgment interest, in accordance with the delinquent tax rate as established by the Internal Revenue Service, IRC § 6621(a)(2), and assessed on a quarterly basis, from approximately the date of the filing of this action, January 10, 2003, through the end of November 2006. *SEC v. Poirier*, 140 F.Supp.2d 1033, 1047 (D. Ariz. 2001). Based on the $7,040,590.43 GetAnswers received in ill-gotten gains, application of that rate results in

---

[1] Courts routinely require wrongdoers in securities fraud cases to disgorge the gross sums received from investors. *SEC v. United Monetary Services, Inc.*, No. 83-8540-CIV, 1990 WL 91812, at *9 (S.D. Fla. May 18, 1990). Business expenses should not offset disgorgement liability. *SEC v. Kenton Capital, Ltd*, 69 F.Supp.2d 1, 15-16 (D.D.C. 1998); *SEC v. TLC Investments & Trade Co.*, 179 F.Supp.2d 1149, 1156 (C.D. Cal. 2001); *SEC v. Great Lakes Equities Co.,* 775 F. Supp. 211, 214 (E.D. Mich. 1991).

8

prejudgment interest of $1,632,496.20.  The Commission's Prejudgment Interest Report as to GetAnswers is attached as Exhibit 2.

### C. The Court Should Impose the Maximum Civil Penalty Allowed Against GetAnswers.

The Commission seeks the imposition of the maximum penalty allowed against GetAnswers pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act.  These two statutes are virtually identical and establish three tiers of penalties.  Under the "First Tier" the court may impose a penalty of up to (i) $60,000 on a corporate defendant for each violation or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation.  Under the "Second Tier" the Court may impose a penalty of up to (i) $300,000 on a corporate defendant for each violation or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation.  The Second Tier applies where the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

Finally, under the "Third Tier" the Court may impose a penalty of up to (i) $600,000 on a corporate defendant for each violation or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation.[2]  *SEC v. KS Advisors, Inc*., 2:04-CV-105-FTM-29, 2006 WL 288227 *1, *4 (M.D. Fla. Feb. 6, 2006) ("having determined the gross amount of pecuniary gain to be sound, that a civil penalty in the same amount is also appropriate and within the Court's discretion").  The Third Tier applies for cases in which the requirements of a Second Tier penalty are present *and* the violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

GetAnswers merits a third-tier penalty because its conduct involved deception and fraud, and resulted in substantial losses to investors.  GetAnswers raised more than $7 million from

---

[2] These numbers are based on the Federal Civil Penalties Inflation Adjustment Act of 1990.  17 C.F.R. Pt. 201, §§ 201.1001-1002, Tbl. II to Subpt. E, 66 FR 8761 at * 8662-63.

9

investors under false pretenses, and investors will likely recover nothing of the amounts they invested. *Meadows v. SEC*, 119 F.3d 1219, 1228 (5th Cir. 1997) (court noted the magnitude of investor losses (more than $600,000) in affirming $100,000 penalty); *SEC v. Friendly Power Company LLC*, 49 F. Supp. 2d 1363, 1373 (S.D. Fla. 1999) (ordering a third-tier penalty because defendants' violation of securities laws created a substantial risk that investors would lose their investments); *SEC v. Rosenfeld*, No. 97 CIV.1467, 2001 WL 118612 *1, *4 (S.D.N.Y. Jan. 9, 2001) (defendant's fraudulent scheme to inflate value of stock and distribute unregistered stock caused more than $12 million in losses to investors and justified Court imposing third tier penalty of more than $12 million). Based on the allegations of the complaint (which the Court should deem true for purposes of this motion), GetAnswers' conduct unquestionably warrants the imposition of the maximum penalty. Therefore, the Court should impose a $600,000 penalty for each violation by GetAnswers alleged in the complaint **or** impose a $7,040,590.43 penalty against GetAnswers (the gross amount of its pecuniary gain).

## II.     Koenig

On April 25, 2003, the Court entered a Judgment of Permanent Injunction And Other Relief against Koenig, by consent, enjoining him from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act; and Sections 20(a) and 10(b) of the Exchange Act, and Rule 10b-5 thereunder; and barring him from participating in any offering of a penny stock (D.E. 81). The Judgment against Koenig further provides:

> **IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED** that Koenig shall be liable to disgorge all ill-gotten profits or proceeds he received, if any, as a result of the acts and/or conduct alleged in the Complaint, plus prejudgment interest thereon. The amount of disgorgement, if any, shall be determined upon the Commission's motion, Koenig's response thereto, and after an evidentiary hearing.

> **IT IS FURTHER HEREBY FURTHER ORDERED, ADJUDGED AND DECREED** that Koenig shall be liable to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15 US.C.§ 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), in connection with the acts and/or conduct described in the Commission's Complaint.  The amount of civil penalties Koenig shall pay, shall be determined by the Court upon the Commission's motion, Koenig's response thereto, and after an evidentiary hearing.
>
> For the sole purpose of determination of the amount of disgorgement and civil penalties, Koenig agrees not to contest any of the factual allegations in the Complaint, except to the extent that any allegation may relate to the amount of disgorgement, if any, applicable to Koenig.  Koenig may, however, contest the amount of disgorgement and civil penalties requested by the SEC.

(D.E. 81 at 5-6).  Hence, the Court has already ordered that Koenig: (1) shall disgorge, with prejudgment interest, all ill-gotten profits or proceeds he received, directly or indirectly, as a result of the acts or courses of conduct described in the complaint, and (2) pay a civil penalty based on his unlawful conduct.

### A.   The Court Should Order Koenig to Pay $41,538.40 in Disgorgement and $9,631.48 in Prejudgment Interest.

Based upon the allegations of the complaint, which the Court must deem true,[3] Koenig cannot dispute that he directly participated in the management of GetAnswers and was directly involved in its day-to-day operations at the highest levels (Complaint, D.E. 187 at ¶ 69).  By reason of his position as CEO and president of GetAnswers, Koenig had significant decision-making authority and controlled, or had the power to control, the content of GetAnswers' offering materials, marketing materials, website and statements by sales representatives.  *Id*.  Koenig was also directly involved in the solicitation of investors.  *Id*. at ¶ 70.  For example, Koenig signed the initial unsolicited facsimile sent to doctors inviting them to join GetAnswers' "medical advisory board" that was the pretext used to solicit investors.  *Id*.  GetAnswers'

---

[3] "Koenig agrees not to contest any of the factual allegations in the complaint, except to the extent that any allegation may relate to the amount of disgorgement, if any, applicable to Koenig." (Judgment, D.E. 81, at 6).

11

offering materials also included a signed introductory letter from Koenig touting GetAnswers as an investment and comparing GetAnswers to successful Internet companies. *Id*. Koenig also had hands-on dealings with investors and was directly involved in their solicitation and the subsequent loss or misuse of the $7,040,590.43 million in investor money. *Id*. at ¶¶ 69-73.

As detailed in the complaint, Koenig's unlawful acts began no later than December 2000 and lasted through January 2003. *Id*. at ¶ 2. As evidenced by the Affidavit of Soneet R. Kapila and Kapila & Company's Initial Report to Receiver, during the fraudulent time period alleged in the Commission's complaint, Koenig received $41,538.40 from GetAnswers (Kapila Affidavit at ¶ 7) and (Exhibit A to Affidavit, Initial Report to Receiver, Summary of Inflows and Outflows, page 9). Koenig has not re-paid any of these ill-gotten gains. The Court should, therefore, set Koenig's disgorgement at $41,538.40.

As provided by Koenig's Judgment, the Court should also require Koenig to pay pre-judgment interest. The Commission calculated pre-judgment interest in accordance with the delinquent tax rate as established by the Internal Revenue Service, IRC § 6621(a)(2), and assessed on a quarterly basis, from approximately the date of the filing of this action, January 10, 2003, through the end of November 2006. *Poirier*, 140 F.Supp.2d at 1047. Based on the principal amount of $41,538.40 that Koenig received in ill-gotten gains, application of that rate results in prejudgment interest of $9,631.48. The Commission's Prejudgment Interest Report as to Koenig is attached as Exhibit 3.

### B. The Court Should Impose a $120,000 Civil Money Penalty Against Koenig.

The Commission seeks a $120,000 penalty against Koenig pursuant to Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act. Under the First Tier for both statutes, the court may impose a penalty of up to (i) $6,500 on a individual defendant for each violation or

(ii) the gross amount of pecuniary gain to the defendant as a result of the violation. Under the Second Tier the Court may impose a penalty of up to (i) $60,000 on an individual defendant for each violation or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation. The Second Tier applies where the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement.

Finally, under the Third Tier the Court may impose a penalty of up to (i) $120,000 on an individual defendant for each violation or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation.[4]  *KS Advisors*, 2006 WL 288227, at *4. The Third Tier applies for cases in which the requirements of a Second Tier penalty are present *and* the violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons.

Koenig merits a $120,000 third-tier penalty because his misconduct involved fraud, manipulation, and reckless disregard of a regulatory requirement, and resulted in substantial losses to investors. Based on the allegations of the complaint, which the Court must deem true for purposes of this motion, Koenig's conduct involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons" by causing millions in investor losses. *Meadows*, 119 F.3d at 1228; *Friendly Power Co.*, 49 F.Supp.2d at 1373; *Rosenfeld*, 2001 WL 118612, at *4. With the help of Koenig as president and CEO, GetAnswers raised at least $7,040,590.43 from investors under false pretenses (D.E. 187 at ¶ 2; Kapila Aff. at ¶ 7). As demonstrated above, Koenig was a primary figure involved in the

---

[4] These numbers are based on the Federal Civil Penalties Inflation Adjustment Act of 1990. 17 C.F.R. Pt. 201, §§ 201.1001-1002, Tbl. II to Subpt. E, 66 FR 8761 at * 8662-63.

GetAnswers offering fraud. Consequently, the Court should order Koenig to pay a civil penalty of $120,000.

### III. <u>Cournoyer</u>

**The Court Should Impose the Maximum Civil Penalty Allowed Against Cournoyer.**

On March 4, 2004, the Court entered a Judgment of Permanent Injunction And Other Relief against Cournoyer, by consent, enjoining him from future violations of Sections 5(a), 5(c), and 17(a) of the Securities Act; and Sections 20(a), 15(a)(1), and 10(b) of the Exchange Act, and Rule 10b-5 thereunder; and barring him from participating in any offering of a penny stock (D.E. 183). The Judgment against him further states: "Cournoyer shall be liable to pay civil penalties" (D.E. 183 at 3), and "[f]or the sole purpose of determination of the amount of disgorgement and civil penalties, Cournoyer agrees not to contest any of the factual allegations in the Complaint." *Id.* at 6. The Commission dismissed its disgorgement claim against Cournoyer because he agreed to disgorge or is liable to disgorge his ill-gotten gains to the Receiver (D.E. 181). Thus, the only issue remaining in this case against Cournoyer is whether the Court should order him to pay a civil penalty.

The Commission seeks the imposition of the maximum penalty allowed against Cournoyer under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(3). As stated earlier, under the Third Tier the Court may impose a penalty of up to $120,000 on an individual defendant for each violation or the gross amount of pecuniary gain to a defendant as a result of the violation. *KS Advisors, Inc.*, 2006 WL 288227, at *4. The Third Tier applies to violations involving fraud that "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."

Cournoyer's conduct involved deception and fraud, and resulted in substantial losses to investors. As head of GetAnswers' boiler room, he played a substantial role in raising more than

14

$7 million from investors under false pretenses. Based on the allegations of the complaint, which the Court should deem as true for purposes of this motion,[5] Cournoyer's conduct warrants the imposition of the maximum penalty. The allegations specific to Cournoyer include:

> As the COO of GetAnswers, Cournoyer directly participated in the management of GetAnswers and was directly involved in its day-to-day operations at the highest levels. Cournoyer directly oversaw the day-to-day operations of GetAnswers' in-house boiler room. *Id*. at ¶ 74.
>
> GetAnswers' website stated that Cournoyer was ". . . responsible for identifying, qualifying, securing and servicing capital funding services." Cournoyer had the power to control GetAnswers' fundraising actions and policies, and shared the ability to control some, if not all, of GetAnswers' corporate actions and policies in other areas. *Id*. at ¶ 75.
>
> Cournoyer personally solicited funds from potential investors and communicated with potential investors in writing. In particular, Cournoyer sent prospective investors a letter, which touted Koenig's Internet background and stated that:
>
>> GetAnswers has the benefit of a seasoned President who successfully pioneered the Internet during its boom from 1996 to 2000 (Allstudents.com which later turned into EZNotes.com which was purchased by Disney). *Id*. at ¶ 76.
>
> Cournoyer was also heard on GetAnswers' website through an audio clip stating that as a "principal owner, I have many duties," and touting GetAnswers by stating "I feel that this venture will be my largest and most successful company to date" and that his biggest role is in "securing capital funding." In a separate audio clip, Cournoyer falsely claimed that GetAnswers was operating a joint venture with the college. *Id*. at ¶ 77.
>
> Cournoyer received, and authorized the payment of, transaction-based compensation, in the form of commissions in connection with the sale of GetAnswers' securities. *Id*. at ¶ 78.
>
> Based on the foregoing and the other allegations set forth above in this Complaint, Cournoyer knew, or was severely reckless in not knowing, that material misrepresentations and omissions were made to investors in

---

[5] The Judgment against Cournoyer states "For the sole purpose of determination of the amount of disgorgement and civil penalties, Cournoyer agrees not to contest any of the factual allegations in the Complaint." (D.E. 183 at 6).

GetAnswers' offering and marketing materials and by sales representatives. *Id*. at ¶ 79.

Based on the allegations of the complaint, there is no question that Cournoyer's conduct involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons" by causing millions in investor losses. *Meadows*, 119 F.3d at 1228; *Friendly Power Company*, 49 F.Supp.2d at 1363; *Rosenfeld*, 2001 WL 118612, at *4. Consequently, the Court should impose a $120,000 penalty for each violation by Cournoyer alleged in the complaint **or** impose a $1,188,599.27 penalty against Cournoyer (the gross amount of his pecuniary gain).

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Commission respectfully requests the Court enter three final judgments: (1) entering a permanent injunction against Defendant GetAnswers, finding it liable for disgorgement of $7,040,590.43, plus prejudgment interest of $1,632,496.20, and ordering it to pay the maximum civil penalty allowed under the law; (2) finding Defendant James Koenig liable for disgorgement of $41,538.40 plus prejudgment interest of $9,631.48, and ordering him to pay a civil penalty of $120,000; and (3) ordering Defendant Robert Cournoyer to pay the maximum civil penalty allowed under the law.

Three proposed final judgments are attached to this motion.

November 29, 2006                                       Respectfully submitted,

                                        By:    /s/ Roger Cruz
                                               Roger Cruz
                                               Senior Trial Counsel
                                               Florida Bar No. 157971
                                               Securities and Exchange Commission
                                               801 Brickell Avenue, Suite 1800

        Miami, Florida 33131
        Telephone: (305) 982-6379
        Facsimile: (305) 536-4154
        cruzr@sec.gov

        Trisha D. Sindler
        Special Counsel
        Florida Bar No. 0773492
        Telephone:  (305) 982-6352
        Facsimile: (305) 536-4154

        Attorneys for Plaintiff
        SECURITIES AND EXCHANGE COMMISSION
        801 Brickell Avenue, Suite 1800
        Miami, Florida  33131
        Telephone: (305) 982-6300
        Facsimile:   (305) 536-4154

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 29, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        s/ Roger Cruz
        Roger Cruz

## SERVICE LIST

Securities and Exchange Commission v. GetAnswers, Inc., et al.
Case No. 03-20048-CIV-KING/O'SULLIVAN
United States District Court, Southern District of Florida

Jonathan Butler, Esq.
Kathy M. Klock, Former Receiver GetAnswers, Inc.
Fowler, White & Burnett
777 S. Flagler Drive
Suite 800, West Tower
West Palm Beach, FL 33401
Service by U.S. Mail

Eric A. Waraftig, Esq.
Law Office of Eric A. Waraftig
575 W. 50th St.
Miami Beach, FL 33140
Telephone: (305) 895-0000
Facsimile:  (305) 868-2427
Counsel for James Koenig
Service by U.S. Mail

Joseph R. Buchanan, Esq.
Wampler, Buchanan,Walker et al
SunTrust International Center, Suite 1700
One S.E. Third Avenue
Miami Florida 33131
Counsel for Robert Cournoyer, individually, and as
Officer/Director of OceanMark Consulting Group, Inc.
Service by CM/ECF Notification

Christopher Bruno, Esq.
10615 Judicial Drive
Suite 703
Fairfax, VA 22030
Counsel for Charles Ehrlich
Service by U.S. Mail

John W. Kearns, Esq.
431 Gerona Avenue
Coral Gables, Florida 33146
Counsel for Shareholders of Defendant, GetAnswers, Inc. (Albert W. Grazia; Theresa Grazia;
Victor J. Salvo; Rosalie G. Mednick; Adam S. Mednick, M.D., Ph.D.; Robert E. Sterling, M.D.;
Marla Sterling; Dr. Michael D. Leddy; Karen E. Steinberg, M.D.)
Service by CM/ECF Notification